2004 UT App 267

**STATE of Utah, Plaintiff and Appellee,**

v.

**Richard NORRIS, Defendant and Appellant.**

**No. 20020966–CA.**

Court of Appeals of Utah.

Aug. 12, 2004.

Jennifer K. Gowans, Fillmore Spencer LLC, Provo, for Appellant.

Mark L. Shurtleff, Attorney General, and Jeffrey S. Gray, Assistant Attorney General, Salt Lake City, for Appellee.

Before BENCH, Associate P.J., and DAVIS and ORME, JJ.

## OPINION

DAVIS, Judge:

¶1 After entering an unconditional, voluntary guilty plea to three counts of communications fraud, Richard Norris (Defendant) challenges the constitutionality of the underlying statute (the communications fraud statute) on appeal. *See* Utah Code Ann. § 76–10–1801 (2003).[1] We affirm.

## BACKGROUND

¶2 Defendant was charged with seven counts of communications fraud and was bound over on all counts. *See* Utah Code Ann. § 76–10–1801 (2003). After several days of trial, Defendant entered an unconditional, voluntary guilty plea to three counts of third-degree-felony communications fraud. *See id.* § 76–10–1801(1)(c). After sentencing, and without moving to withdraw his guilty pleas, Defendant filed a timely notice of appeal, mounting a facial challenge to the constitutionality of the communications fraud statute on overbreadth and vagueness grounds.

## ISSUES AND STANDARDS OF REVIEW

¶3 We consider two issues on appeal. First, we must determine whether this court has subject matter jurisdiction to consider Defendant's constitutional challenge after Defendant entered an unconditional, voluntary guilty plea. "The determination of whether a court has subject matter jurisdiction is a question of law, which we review for correctness...." *Beaver County v. Qwest, Inc.*, 2001 UT 81,¶8, 31 P.3d 1147. Second, if this court has jurisdiction, then we must consider whether the communications fraud statute is unconstitutionally overbroad or vague on its face. "Constitutional challenges to statutes present questions of law, which we review for correctness." *Provo City Corp. v. Thompson*, 2004 UT 14,¶5, 86 P.3d 735. "When addressing such a challenge, this court presumes that the statute is valid, and we resolve any reasonable doubts in favor of constitutionality." *State v. Lopes*, 1999 UT 24,¶6, 980 P.2d 191.

## ANALYSIS

### I. Subject Matter Jurisdiction

¶4 "The general rule applicable in criminal proceedings ... is that by pleading guilty, the defendant is deemed to have admitted all of the essential elements of the

---

1. Because the communications fraud statute has not changed since Defendant was charged, we cite to the most current version for convenience.

crime charged and thereby waives all nonjurisdictional defects, including alleged pre-plea constitutional violations." *State v. Parsons*, 781 P.2d 1275, 1278 (Utah 1989); *see also State v. Hardy*, 2002 UT App 244, ¶ 13, 54 P.3d 645. The State asserts that Defendant's facial challenge to the constitutionality of the communications fraud statute falls within the ambit of the "pre-plea constitutional violations" mentioned in *Parsons*. 781 P.2d at 1278. Therefore, the State argues that because Defendant's challenge is nonjurisdictional in nature, it was waived by his guilty plea. Defendant asserts that "pre-plea constitutional violations," *id.*, encompass violations involving such things as *Miranda* admonitions and search warrants, and that a facial constitutional challenge to a statute is, at its heart, a jurisdictional issue. Therefore, Defendant argues that his challenge was not waived by his guilty plea.

¶ 5 "Subject matter jurisdiction is the power and authority of the court to determine a controversy and without which it cannot proceed." *Thompson v. Jackson*, 743 P.2d 1230, 1232 (Utah Ct.App.1987) (per curiam). Subject matter jurisdiction "can neither be waived nor conferred by consent of the accused. Objection to the jurisdiction of the court over the subject matter may be urged at any stage of the proceedings, and the right to make such an objection is never waived." *James v. Galetka*, 965 P.2d 567, 570 (Utah Ct.App.1998) (quotations and citations omitted). When subject matter jurisdiction is an issue, "[i]t is the duty of this court to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review.'" *EEOC v. Chicago Club*, 86 F.3d 1423, 1428 (7th Cir.1996) (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244, 55 S.Ct. 162, 79 L.Ed. 338 (1934)).[2]

¶ 6 "In general, a plea of guilty waives all nonjurisdictional defects, but does not bar appeal of claims that the applicable statute is unconstitutional or that the indictment fails to state an offense." *United States v. Broncheau*, 597 F.2d 1260, 1262 n. 1 (9th Cir.1979). "Although a guilty plea waives all non[ ]jurisdictional defects and fact issues, a vagueness challenge is a jurisdictional defect. Thus, following a guilty plea, a defendant could raise on appeal that he was prosecuted under an unconstitutional statute." *United States v. Skinner*, 25 F.3d 1314, 1317 (6th Cir.1994) (quotations and citation omitted); *see Menna v. New York*, 423 U.S. 61, 62 n. 2, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) (per curiam) ("We simply hold that a plea of guilty to a charge does not waive a claim that—judged on its face—the charge is one which the State may not constitutionally prosecute."); *Blackledge v. Perry*, 417 U.S. 21, 30–31, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) (holding that guilty plea did not preclude the defendant from raising his constitutional claims because they "went to the very power of the State to bring the defendant into court to answer the charge brought against him"); *United States v. Whited*, 311 F.3d 259, 262 (3d Cir.2002) (addressing defendant's claim that the underlying statute was unconstitutional because it "properly f[e]ll within the narrow scope of review not barred by a guilty plea"), *cert. denied*, 538 U.S. 1065, 123 S.Ct. 2234, 155 L.Ed.2d 1121 (2003); *United States v. Morgan*, 230 F.3d 1067, 1071 (8th Cir.2000) (recognizing that a claim that a statute is facially unconstitutional is a jurisdictional claim not waived by a guilty plea); *United States v. McKenzie*, 99 F.3d 813, 816 (7th Cir.1996) (addressing defendant's argument on appeal after his guilty plea because he made "the only argument

---

**2.** Instead of focusing on whether subject matter jurisdiction exists in a particular context, Judge Bench relies on Utah cases generally describing jurisdiction of our courts of general jurisdiction. The issue squarely presented in this case has not been addressed by Utah courts.

Our jurisprudence, however, is no stranger to the concept that a court with general jurisdiction over a particular claim may or may not have subject matter jurisdiction over that claim. Although not directly analogous to the case at bar, perhaps the best example involves claims against governmental entities. There is no question that courts of general jurisdiction in Utah have jurisdiction over those claims. This notwithstanding, however, Utah appellate decisions have repeatedly held that the failure to strictly comply with the statutory requirements for claims against governmental entities deprives those courts of subject matter jurisdiction over such claims. *See, e.g., Greene v. Utah Transit Auth.*, 2001 UT 109, ¶¶ 16–17, 37 P.3d 1156; *Security Inv. Ltd. v. Brown*, 2002 UT App 131, ¶ 13, 47 P.3d 97.

available to him by asserting a jurisdictional challenge based on the constitutionality of the underlying statute"); *United States v. Kenney,* 91 F.3d 884, 885 n. 1 (7th Cir.1996) ("[The defendant] entered his guilty plea without preserving his constitutional challenge[ to the underlying statute] for appeal. However, the government has expressly declined to raise a waiver argument, citing *United States v. Bell,* 70 F.3d 495, 496–97 (7th Cir.1995) (challenge to constitutionality of statute of conviction is, in certain circumstances, jurisdictional claim not waived by guilty plea)."); *Bell,* 70 F.3d at 496–97 (addressing defendant's challenge to the constitutionality of the underlying statute after recognizing the principle that such a challenge "is a jurisdictional claim which is not waived by the guilty plea"); *United States v. Palacios–Casquete,* 55 F.3d 557, 561 (11th Cir.1995) ("A guilty plea . . . does not waive the right of an accused to challenge the constitutionality of the statute under which he is convicted."); *Marzano v. Kincheloe,* 915 F.2d 549, 552 (9th Cir.1990) (holding that the defendant "did not waive his constitutional attack on the [underlying] statute by pleading guilty"); *United States v. Montilla,* 870 F.2d 549, 552 (9th Cir.1989) (stating that although the dividing line between constitutional claims that are waived by a guilty plea and those that survive the plea is not "crystal-clear," "[c]laims that 'the applicable statute is unconstitutional or that the indictment fails to state an offense' are jurisdictional claims not waived by the guilty plea" (quoting *Broncheau,* 597 F.2d at 1262 n. 1)), *amended by* 907 F.2d 115 (9th Cir.1990); *United States v. Barboa,* 777 F.2d 1420, 1423 n. 3 (10th Cir.1985) ("A plea of guilty . . . does not bar a claim that the defendant may not constitutionally be convicted in the first instance. . . . If [the defendant] ple[aded] guilty to something which was not a crime, he is not now precluded from raising this jurisdictional defect, which goes 'to the very power of the State to bring the defendant into court to answer the charge brought against him.'" (quoting *Blackledge,* 417 U.S. at 30, 94 S.Ct. 2098)); *United States v. Hill,*

564 F.2d 1179, 1180 (5th Cir.1977) (per curiam) (recognizing that "a guilty plea does not bar an appeal that asserts that . . . the charge is unconstitutional"); *United States v. Tallant,* 547 F.2d 1291, 1295 n. 5 (5th Cir. 1977) (recognizing that a claim based upon "the unconstitutionality of the statute underlying the indictment" was an "appealable issue[ ] following a . . . guilty plea"); *United States v. Winter,* 509 F.2d 975, 978 n. 8 (5th Cir.1975) (recognizing "that after entering . . . a plea of guilty, a defendant may only appeal jurisdictional defects in the proceeding below, such as . . . the unconstitutionality of the statute underlying the indictment"); *Mercado v. Rockefeller,* 502 F.2d 666, 672 (2d Cir.1974) ("[I]t is clear that [a] guilty plea waives only nonjurisdictional defects and does not waive the right to contest the constitutionality of the statute that is the basis for a conviction." (second alteration in original) (quotations and citation omitted)); *United States v. Cox,* 464 F.2d 937, 941 (6th Cir.1972) (recognizing that "[a] defendant who has pleaded guilty is not barred from claiming . . . that the statute under which he was charged is unconstitutional" (quotations and citation omitted)); 1A Charles Alan Wright, Federal Practice and Procedure: Criminal § 175 (3d ed. 1999) ("[T]he preclusive effects of guilty pleas do not apply to constitutional claims that go 'to the very power of the State to bring the defendant into court to answer the charge brought against him.' A defendant who has pleaded guilty may still contend . . . that the statute under which he was charged is unconstitutional." (quoting *Blackledge,* 417 U.S. at 30, 94 S.Ct. 2098) (footnotes omitted)).

¶ 7 Because a facial challenge to the constitutionality of a statute directly cuts to "the power and authority of the court to determine a controversy," *Thompson,* 743 P.2d at 1232, it is necessarily a jurisdictional matter. Accordingly, an unconditional guilty plea does not operate as a waiver of a facial constitutional challenge to a statute, because such a challenge is jurisdictional in nature.[3]

---

3. The justice court appeal process analog in Judge Bench's opinion is somewhat puzzling.

Since justice courts are not courts of record, traditional appellate review is generally unavailable or severely limited. This notwithstanding,

Therefore, we address Defendant's arguments.[4]

## II. Constitutional Challenge

¶ 8 Defendant argues that the communications fraud statute is unconstitutionally overbroad and vague. *See* Utah Code Ann. § 76–10–1801 (2003). We consider each of his arguments in turn.

### A. Overbreadth

¶ 9 "In considering whether a statute [is overbroad], a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *In re I.M.L.*, 2002 UT 110,- ¶ 15, 61 P.3d 1038 (quotations and citations omitted). We examine "criminal statutes ... with particular care; those that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." *Id.* (quotations and citations omitted). However, "[o]nly a statute that is substantially overbroad may be invalidated on its face." *City of Houston v. Hill*, 482 U.S. 451, 458, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987). Overbreadth "must not only be real, but substantial as well." *Ashcroft v. ACLU*, 535 U.S. 564, 584, 122 S.Ct. 1700, 152 L.Ed.2d 771 (2002) (quotations and citation omitted).

¶ 10 When interpreting the challenged language, "we look to the statute's plain language and presume that the legislature used each term advisedly." *In re I.M.L.*, 2002 UT 110 at ¶ 16, 61 P.3d 1038. "Statutory language is overbroad if its language proscribes both harmful and innocuous behavior." *Salt Lake City v. Lopez*, 935 P.2d 1259, 1263 (Utah Ct.App.1997) (quotations and citations omitted). The communications fraud statute prohibits

> devis[ing] any scheme or artifice to defraud another or to obtain from another money, property, or anything of value by means of false or fraudulent pretenses, representations, promises, or material omissions, and ... communicat[ing] directly or indirectly with any person by any means for the purpose of executing or concealing the scheme or artifice.

Utah Code Ann. § 76–10–1801(1). Defendant posits that the communications fraud statute is overbroad "because it permits criminal prosecution and sanctions in every case involving a communication[ ] that could be construed as dishonest." Specifically, Defendant argues that the communications fraud statute does not require an intent to defraud, and that it criminalizes innocuous behavior because "[a]s long as there is an artifice, a false communication in any form made for the purpose of executing the artifice, and a desire to obtain anything of value, the elements of the communications fraud statute are met." Defendant also alleges that the modes of communications prohibited

---

the Utah Constitution guarantees "the right to appeal in all[ criminal] cases." Utah Const. art. I, § 12. In *City of Monticello v. Christensen*, 788 P.2d 513 (Utah 1990), our supreme court ruled that the trial de novo appellate procedure now set out in Utah Code Annotated section 78–5–120 (2002) satisfied this constitutional mandate. *See Christensen*, 788 P.2d at 518–19. Following a trial de novo, traditional appeal therefrom is available only if "the district court rules on the constitutionality of a statute or ordinance." Utah Code Ann. § 78–5–120(7).

In our view, this unique process for obtaining review of justice court proceedings has nothing to do with issue preservation or waiver of nonjurisdictional constitutional claims by voluntary guilty plea—section 78–5–120 makes no reference to either. Indeed, if anything, it is a recognition of the importance of claims involving the constitutionality of statutes or ordinances, specifically contemplating such challenges in the court of record in the first appeal. Under the statutory

scheme, raising the constitutional challenge to the statute or ordinance is the method by which jurisdiction is conferred on appellate courts to entertain further appeals, the defendant having already been accorded his or her constitutional right of appeal from the justice court by trial de novo in a court of record. This is a far cry from the ability to challenge subject matter jurisdiction in an initial appeal of right.

4. The State argues that *Myers v. State*, 2004 UT 31, 94 P.3d 211, both addresses and disposes of the issues herein. The appellant's claims in *Myers* were based upon the Post–Conviction Remedies Act, *see id.* at ¶ 10; and, to the extent the appellant alluded to constitutional defects in a statute, his challenge was not facial. Accordingly, the Utah Supreme Court characterized his argument as based on an "allegedly incorrect legal interpretation [of a rule of law]," and never addressed or ruled upon the effect of a facial constitutional challenge. *Id.* at ¶ 17.

in the communications fraud statute are similarly overbroad and prohibit constitutionally protected conduct. *See id.* § 76–10–1801(6). We disagree.

¶ 11 First, the communications fraud statute does not prohibit all false "pretenses, representations, promises, or material omissions," only those where an individual seeks "to defraud another or to obtain from another money, property, or anything of value." *Id.* § 76–10–1801(1). Second, it requires proof that the false or fraudulent "pretenses, representations, promises, or material omissions made or omitted were made or omitted intentionally, knowingly, or with a reckless disregard for the truth." *Id.* § 76–10–1801(7). While the First Amendment may value some falsehoods for their contribution to public debate, *see New York Times Co. v. Sullivan,* 376 U.S. 254, 279 n. 19, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), it has not given protection to malicious statements that were made "with knowledge that [they were] false or with reckless disregard of whether [they were] false or not." *Id.* at 279–80, 84 S.Ct. 710. The communications fraud statute draws the distinction between criminal and innocent behavior with a similar mens rea, and thus, it cannot be said that it is "substantially overbroad" and should be "invalidated on its face." *Hill,* 482 U.S. at 458, 107 S.Ct. 2502. Accordingly, we conclude that the communications fraud statute is not overbroad on its face.

### B. Vagueness

¶ 12 Defendant argues that the communications fraud statute is unconstitutionally vague in its use of the terms "artifice," "communicate," and "anything of value." Utah Code Ann. § 76–10–1801(1), (6)(a). "The void-for-vagueness doctrine requires that a statute or ordinance define an offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Lopez,* 935 P.2d at 1265 (quotations and citations omitted). However, because the communications fraud statute "implicates no constitutionally protected conduct," Defendant must show that it "is

impermissibly vague in all of its applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494–95, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).

¶ 13 Defendant argues that the term "artifice," Utah Code Ann. § 76–10–1801(1), is defined too broadly and would encompass any form of deceit so that ordinary persons would not know whether the deceit was prohibited. While not defined in the communications fraud statute, "artifice" is commonly understood to mean "an artful stratagem," or a "trick." Webster's New Collegiate Dictionary 106 (9th ed.1986). Black's Law Dictionary defines "artifice" similarly as "[a] clever plan or idea, esp[ecially] one intended to deceive." Black's Law Dictionary 108 (7th ed.1999). Additionally, we do not read the term "artifice," Utah Code Ann. § 76–10–1801(1), in a vacuum, but rather as it relates to the other terms within the communications fraud statute. *See Dowling v. Bullen,* 2004 UT 50, ¶ 8, 94 P.3d 915 (stating that "[s]ubsections of a statute should not be construed in a vacuum but must be read as part of the statute as a whole" (alteration in original) (quotations and citation omitted)). Contrary to Defendant's assertions, the communications fraud statute does not prohibit all artful stratagems and tricks, only those meant to, inter alia, defraud others. While the term "artifice," Utah Code Ann. § 76–10–1801(1), may be construed broadly, "a statute is not unconstitutionally vague because it is broad." *State v. Wareham,* 772 P.2d 960, 966 (Utah 1989). We conclude that the term "artifice," Utah Code Ann. § 76–10–1801(1), is used with "sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Lopez,* 935 P.2d at 1265 (quotations and citations omitted). Therefore, we conclude that the term "artifice," as used in the communications fraud statute, is not unconstitutionally vague. Utah Code Ann. § 76–10–1801(1).

¶ 14 Defendant next argues that the term "communicate," Utah Code Ann. § 76–10–1801(6)(a), is vague because it is "given the broadest possible definition" under the

communications fraud statute. The communications fraud statute prohibits "communicat[ing] directly or indirectly with any person by any means for the purpose of executing or concealing the scheme or artifice." *Id.* § 76–10–1801(1). Additionally, it specifically states that to communicate "means to bestow, convey, make known, recount, impart; to give by way of information; to talk over; or to transmit information." *Id.* § 76–10–1801(6)(a). Defendant's argument is unavailing. Although "communicate," Utah Code Ann. § 76–10–1801(6)(a), is broadly defined, this does not necessarily make the term unconstitutionally vague. *See Wareham,* 772 P.2d at 966. Indeed, the communications fraud statute does not seek to punish those who keep an artifice or scheme to themselves. Defendant fails to demonstrate how "ordinary people can[not] understand what conduct is prohibited," *Lopez,* 935 P.2d at 1265 (quotations and citations omitted), and therefore, fails to demonstrate that the term "communicate," as used in the communications fraud statute, is unconstitutionally vague. Utah Code Ann. § 76–10–1801(6)(a).

¶ 15 Finally, Defendant argues that the phrase "anything of value," Utah Code Ann. § 76–10–1801(1), is unconstitutionally vague because it is undefined and left open to a variety of interpretations. Defendant proffers numerous hypothetical situations in an attempt to illustrate the vagueness of the phrase "anything of value." *Id.* However, "speculation about possible vagueness in hypothetical situations not before the [c]ourt will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications." *Hill v. Colorado,* 530 U.S. 703, 733, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000) (quotations and citation omitted). Defendant was charged under the communications fraud statute because he devised a scheme to defraud others of "money." Utah Code Ann. § 76–10–1801(1). We believe that "the vast majority of [the communications fraud statute's] intended applications," *Colorado,* 530 U.S. at 733, 120 S.Ct. 2480 (quotations and citations omitted), will involve incidents where individuals have defrauded others of "money" or "property," Utah Code Ann. § 76–10–1801(1), both of which are terms that are sufficiently understood to allow ordinary citizens to determine what conduct is prohibited. *See Lopez,* 935 P.2d at 1265. Additionally, because Defendant was charged with devising a scheme to defraud others of "money," Utah Code Ann. § 76–10–1801(1), his actions do not fall within the "anything of value" realm, *id.,* and thus, he may not challenge this phrase as unconstitutionally vague. *See Village of Hoffman Estates,* 455 U.S. at 495 n. 7, 102 S.Ct. 1186 ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." (quotations and citation omitted)).[5]

¶ 16 Defendant's constitutional challenge to the communications fraud statute fails. We conclude that the communications fraud statute is neither unconstitutionally overbroad, nor unconstitutionally vague.

## CONCLUSION

¶ 17 A facial challenge to the constitutionality of a statute is jurisdictional in nature and, therefore, we conclude that Defendant's facial challenge to the constitutionality of the communications fraud statute is not barred by his voluntary, unconditional guilty plea. However, in considering Defendant's facial challenge to the communications fraud statute on overbreadth and vagueness grounds, we conclude that it is not unconstitutionally overbroad or vague. Accordingly, we affirm Defendant's conviction.

ORME, Judge (concurring):

¶ 18 I concur in the court's opinion. I write separately to explain my position, because I recognize the lead opinion represents a departure from the general prohibition against raising issues for the first time on appeal, especially in the face of a guilty plea.

¶ 19 For me, the easy proposition is this: Subject matter jurisdiction is an issue that may be raised by either party or the court at any time. So far as I am aware, there is no exception to this rule for guilty pleas. *See*

---

**5.** In his brief on appeal, Defendant states that "[a]rguably, this is precisely the type of conduct

the communications fraud statute was intended to prohibit."

*James v. Galetka,* 965 P.2d 567, 570 (Utah Ct.App.1998) ("[Subject matter jurisdiction] is derived from the law. It can neither be waived nor conferred by consent of the accused. Objection to the jurisdiction of the court over the subject matter may be urged at any stage of the proceedings, and the right to make such an objection is never waived.") (internal quotations & citation omitted), *cert. denied,* 982 P.2d 88 (Utah 1999).

¶ 20 In this sense, the lead opinion's analogy to sovereign immunity cases is actually pretty good. If a plaintiff sued the State without giving the required presuit notice, and the State did not raise the lack of notice as a defense below, it would presumably not be permitted to raise the lack of notice for the first time on appeal in challenging a judgment that had been entered against it. However, if giving the presuit notice is necessary to vest the court with subject matter jurisdiction, then of course the lack of notice could be raised for the first time on appeal. And indeed, giving presuit notice strictly in compliance with the sovereign immunity statute has been held to be a matter of subject matter jurisdiction. *See, e.g., Greene v. Utah Transit Auth.,* 2001 UT 109,¶ 16, 37 P.3d 1156.

¶ 21 While this kind of subject matter jurisdiction issue usually arises in civil cases, the concept is the same in criminal cases. If a guilty plea is entered, and no issues are reserved for appeal consistent with *State v. Sery,* 758 P.2d 935, 939 (Utah Ct.App.1988), then unless the guilty plea is set aside as involuntary, all issues are waived on appeal, except subject matter jurisdiction, which can never be waived. *See James,* 965 P.2d at 570. Thus, if a 32–year–old defendant was charged with murder in juvenile court and pled guilty, on appeal to this court he most certainly could challenge the lack of the juve-

nile court's subject matter jurisdiction over an adult charged with murder, *see* Utah Code Ann. §§ 78–3a–104, –105 (Supp.2003)— even if the guilty plea was otherwise proper and he never raised the jurisdictional problem below. The same is true if a defendant pled guilty to the "crime" of blasphemy, and no such criminal offense were on the books in Utah. If he pled guilty, and did not raise below the point that no such crime existed in Utah, he still could challenge his conviction by raising, albeit for the first time on appeal, the lack of subject matter jurisdiction. And obviously he would succeed. The trial court simply would lack the judicial power to convict the defendant of a nonexistent crime.

¶ 22 Here is where it gets admittedly more tricky: Suppose our criminal code made it a felony to commit the crime of blasphemy, defined as "disparaging the one Almighty God or questioning His existence." If a defendant pled guilty to that offense, did not preserve a constitutional challenge for appeal under *Sery,* and did not raise the constitutionality issue below, could he raise for the first time on appeal the facial unconstitutionality, under the First Amendment, of the statute criminalizing blasphemy? At one level, it seems that charges brought pursuant to such a statute would be just as much a nullity as charges brought, as in the immediately preceding hypothetical, in the complete absence of any blasphemy statute. In simplest terms, in this country there simply could be no crime of blasphemy—any statute purporting to provide otherwise would be facially unconstitutional. But he could not raise this constitutional challenge for the first time on appeal unless facial unconstitutionality goes to subject matter jurisdiction.[1] Does it? I am not completely sure, although I can see that, in concept, an unconstitutional statute is as ineffectual as no statute.

---

1. Judge Bench points out such an argument could be reached under the plain error doctrine. Maybe. But the rescue opportunity provided by the plain error doctrine is rather limited. As hereafter shown, the ability to claim plain error can itself be waived. In contrast, subject matter jurisdiction can never be waived. In the blasphemy hypothetical, if facial unconstitutionality is a matter of subject matter jurisdiction, it could be addressed for the first time on appeal even if plain error was not raised, *see State v. All Real*

*Property,* 2004 UT App 232,¶ 13 n. 7; was inadequately raised, *see State v. Dunn,* 850 P.2d 1201, 1208–09 (Utah 1993) (holding that if any of the requirements for plain error are not met, "plain error is not established" and cannot be raised); or was raised too late. *See Coleman v. Stevens,* 2000 UT 98,¶ 9, 17 P.3d 1122 (holding court would not reach unpreserved issues under plain error doctrine because plain error raised for first time in reply brief).

¶ 23 This is what ultimately explains my vote in this case: No Utah appellate court has squarely answered the question of whether a challenge to a criminal statute based on facial unconstitutionality goes to subject matter jurisdiction. The lead opinion cites a multitude of cases that have held it does; Judge Bench's opinion cites no case that has addressed the question and held it does not.[2] It is admittedly somewhat counterintuitive for me that a substantive conclusion of unconstitutionality—even facial unconstitutionality—defeats subject matter jurisdiction, but that seems to be the prevailing view. Accordingly, with some trepidation, I concur in the court's opinion.

BENCH, Judge (concurring in the result):

¶ 24 I do not necessarily disagree with the main opinion's analysis of the constitutionality of the communications fraud statute. *See* Utah Code Ann. § 76-10-1801 (2003). But, because of the procedural posture of this case, I would rule that we cannot reach the issue under controlling Utah law.[1]

¶ 25 As recognized by the main opinion, Defendant entered an *unconditional* guilty plea to three counts of communications fraud. *Cf. State v. Sery*, 758 P.2d 935, 939 (Utah Ct.App.1988) (allowing defendants to enter conditional pleas preserving the right to appeal any specified pretrial ruling). In the district court, Defendant never challenged the constitutionality of the statute. Nor did he enter a conditional plea to preserve his right to appeal the constitutionality of the communications fraud statute. *See id.* Furthermore, Defendant never filed a motion to withdraw his guilty plea. *See State v. Reyes*, 2002 UT 13,¶ 3, 40 P.3d 630 (requiring defendant to file a motion to withdraw a guilty plea within thirty days after the entry of the plea before defendant can challenge the validity of the guilty plea on appeal). Instead, Defendant filed a notice of appeal directly from his sentence. Now, for the first time, Defendant attempts to raise the issues of

---

**2.** I disagree with Judge Bench's claim that *Myers v. State*, 2004 UT 31, 94 P.3d 211, considered this question and rejected it on the merits. The *Myers* court described the jurisdictional argument asserted in the case as being "somewhat convoluted." *Id.* at ¶ 15. Later, the Court characterized the argument as being tantamount to a "claim[ ] that the trial court's decision constituted an 'erroneous application of the law.' " *Id.* at ¶ 17 (citation omitted). In any event, the Court's dismissal of the jurisdictional argument in *Myers* was premised on the simplistic notion that " '[a] court has subject matter jurisdiction if the case is one of the type of cases the court has been empowered to entertain by the constitution or statute from which the court derives its authority,' " *id.* at ¶ 16 (citation omitted)—an obvious overstatement as readily shown by the sovereign immunity example, i.e., district courts have general civil jurisdiction and even jurisdiction over disputes against the State, but lack subject matter jurisdiction over such a case if the presuit notice is flawed in some way. Another example of the overbreadth of the pronouncement in *Myers* is the fact that appellate courts have the constitutional and statutory power to consider appeals, and yet are held to lack subject matter jurisdiction over appeals that are untimely. *See* Utah Const. art. VIII § 3 ("The Supreme Court shall have appellate jurisdiction over all other matters to be exercised as provided by statute . . . ."); *id.* § 5 ("The jurisdiction of all other courts, both original and appellate, shall be provided by statute."); Utah Code Ann. § 78-2-2(3) (2002) (specifying Supreme Court's appellate jurisdiction); *id.* § 78-2a-3(2) (specifying appellate jurisdiction of Court of Appeals); *Varian-Eimac, Inc. v. Lamoreaux*, 767 P.2d 569, 571 (Utah Ct. App.1989) ("[F]ailure to file an appeal within the required time limit deprived the court of subject matter jurisdiction.") (citing *Watson v. Anderson*, 29 Utah 2d 36, 504 P.2d 1003, 1004 (1973)).

The very best indication that the *Myers* court simply did not have before it the issue we must decide—at least not in any kind of cogent, well-developed way—is that the only authority cited in *Myers* is two decisions from the Utah Court of Appeals and the statute giving the district courts original jurisdiction of "all matters civil and criminal," subject to certain limitations. *Myers*, 2004 UT 31 at ¶ 16, 94 P.3d 211 (quoting Utah Code Ann. § 78-3-4(1) (2002)). The *Myers* opinion did not acknowledge, much less did it treat, the extensive state and federal jurisprudence categorizing the facial unconstitutionality of a criminal statute as being a matter of subject matter jurisdiction—a virtual impossibility if the argument had actually been made and was well-supported, as in the instant case.

**1.** Given the clarity of the Utah law, decisions from the federal courts are not helpful. Nor are the federal cases even consistent with each other. *See, e.g., United States v. Montilla*, 870 F.2d 549, 552 (9th Cir.1989) *amended by* 907 F.2d 115 (9th Cir.1990) ("The dividing line between the majority of constitutional claims waived by a voluntary plea of guilty, and those that challenge the right of the state to hale the defendant into court, and thus survive the plea . . . , has not been crystal-clear.").

overbreadth and vagueness as constitutional challenges to the communications fraud statute. He claims he can do so because subject matter jurisdiction cannot be waived and that the district court lacked jurisdiction to convict him of violating an unconstitutional statute.

¶ 26 This approach reflects a basic misunderstanding of jurisdiction. The Utah Supreme Court recently explained subject matter jurisdiction very succinctly as follows: "A court has subject matter jurisdiction if the case is one of the type of cases the court has been empowered to entertain by the constitution or statute from which the court derives its authority." *Myers v. State*, 2004 UT 31,- ¶ 16, 94 P.3d 211 (other quotations and citation omitted); *see also Salt Lake City v. Ohms*, 881 P.2d 844, 852 (Utah 1994) ("Subject matter jurisdiction is 'the authority and competency *of the court* to decide the case.'" (citations omitted)).

¶ 27 The main opinion contends that a facial challenge to the constitutionality of a statute is necessarily a jurisdictional matter because the inherent constitutionality of a statute affects whether a court has the power and authority to decide the issue. However, without a proper challenge, courts must presume the constitutionality of a statute.

> Statutes are presumed to be constitutional until the contrary is clearly shown. It is only when statutes manifestly infringe upon some constitutional provision that they can be declared void. Every reasonable presumption must be indulged in and every reasonable doubt resolved in favor of constitutionality.

*Jones v. Board of Pardons & Parole*, 2004 UT 53, ¶ 10, 94 P.3d 283 (quotations and citations omitted). Thus, because the communications fraud statute was not challenged below, it is presumed to be constitutional, and the district court had jurisdiction.

¶ 28 In footnote two of the main opinion, my colleagues attempt to find support for their extraordinary decision by pointing to the distinction between general jurisdiction and subject matter jurisdiction. As noted by the main opinion, we do not focus "on whether subject matter jurisdiction exists in [this] particular context" because, unlike claims made against governmental entities—which require compliance with the Immunity Act— the communications fraud statute at issue here requires that nothing be done, by either party, before criminal defendants can be prosecuted and courts can exercise subject matter jurisdiction. With claims against a governmental entity, "the legislature has explicitly declared how, what, when, and to whom a party must direct and deliver a Notice in order to preserve his or her right to maintain an action against a governmental entity." *Greene v. Utah Transit Auth.*, 2001 UT 109, ¶ 15, 37 P.3d 1156. Thus, "[c]ompliance with the Immunity Act is necessary to confer subject matter jurisdiction upon a trial court to hear claims against governmental entities." *Id.* at ¶ 16. In the instant case, as with presumably every other criminal prosecution, the charging statute does not explicitly declare what must be done before subject matter jurisdiction is conferred. Thus, the district court had general jurisdiction as well as subject matter jurisdiction due to an absence of legislative requirements or limitations.[2]

---

2. In an attempt to bolster the main opinion's reasoning, the concurring opinion discusses some rather bizarre hypotheticals. First, the thirty-two-year-old defendant charged with murder in juvenile court. Thankfully, this potential calamity has already been resolved by our legislature. *See* Utah Code Ann. §§ 78–3a–104, – 105(1)(a) (2002) (detailing jurisdiction of juvenile courts). By contrast, our legislature has not limited the jurisdiction of district courts in a similar manner. *See* Utah Code Ann. § 78–3–4(1) (2002) ("The district court has original jurisdiction in all matters civil and criminal, not excepted in the Utah Constitution and not prohibited by law."). Second, the criminal defendant who pleads guilty to the nonexistent crime of blasphemy. If no such crime of blasphemy existed, then we would not indulge in the presumption that a nonexistent, unwritten statute was constitutional. Here, however, a statute does exist, and, until challenged, we must presume it to be constitutional. Third, if a defendant pleaded guilty to the theoretical crime of blasphemy, and did not preserve his constitutional challenge, then he could raise the challenge for the first time on appeal by arguing plain error. A plain error challenge could easily be made without making the facial constitutionality of a statute a prerequisite to subject matter jurisdiction.

As for the concurring opinion's statement that "[n]o Utah appellate court has squarely an-

¶ 29 Therefore, if Defendant wanted to challenge the constitutionality of the communications fraud statute, he had to do so first in the district court. *See, e.g., State v. Pugmire*, 898 P.2d 271, 272 (Utah Ct.App.1995) ("Although [defendant] raises the issue on appeal, he did not challenge the constitutionality of this statutory scheme before the trial court. As a general rule, we will not consider issues—including constitutional issues—initially raised on appeal."); *State v. Webb*, 790 P.2d 65, 77 (Utah Ct.App.1990) ("As the Utah appellate courts have reiterated many times, we generally will not consider an issue, even a constitutional one, which the appellant raises on appeal for the first time.").

¶ 30 This rule applies with equal force to facial challenges to a statute made for the first time on appeal. In *State v. Archambeau*, 820 P.2d 920 (Utah Ct.App.1991), when a *facial* challenge to a criminal statute was raised for the first time on appeal, this court addressed Archambeau's challenge only for the "plain error" and "exceptional circumstances" arguments he made. *See Archambeau*, 820 P.2d at 922, 926. Defendant, in the instant appeal, asserts no claim of plain error or exceptional circumstances.

¶ 31 Allowing defendants to raise constitutional challenges for the first time on appeal will logically necessitate overruling a large body of jurisdictional jurisprudence involving Utah's justice courts. *See, e.g., City of Monticello v. Christensen*, 788 P.2d 513, 517 (Utah 1990) ("[T]his Court [has] repeatedly held that a person dissatisfied with a justice court decision could appeal that decision to a district court and that the district court decision was final unless the validity or constitutionality of a statute was at issue, not on appeal, but in the lower court."); *Draper City v. Roper*, 2003 UT App 312,¶ 2, 78 P.3d

631 (per curiam) ("'The decision of the district court [from a hearing de novo following a justice court's ruling] is final and may not be appealed unless the district court rules on the constitutionality of a statute or ordinance.'" (quoting Utah Code Ann. § 78–5–120(7))); *South Salt Lake City v. Terkelson*, 2002 UT App 405,¶ 6, 61 P.3d 282 ("Utah case law clearly provides that neither this court nor the Utah Supreme Court has jurisdiction to hear an appeal from proceedings in the district court held pursuant to an appeal from the justice court unless the issues raised in the justice court involve[ ] the validity or constitutionality of an ordinance or statute." (quotations and citations omitted)); *City of Kanab v. Guskey*, 965 P.2d 1065, 1068 (Utah Ct.App.1998) ("[H]istorically, Utah appellate courts have never had jurisdiction to hear appeals of district court decisions after a de novo trial on appeal from an unfavorable justice court judgment, absent the raising of a constitutional challenge in the justice court."). The practical consequence of the main opinion is that defendants will now be allowed to challenge the constitutionality of a statute in this court, for the first time, without ever having bothered to raise the issue in either justice or district court.

¶ 32 Having failed below to challenge the statute on grounds of overbreadth and vagueness, and having failed on appeal to argue either plain error or exceptional circumstances, Defendant is now precluded from challenging the constitutionality of the communications fraud statute. I would therefore affirm based on Defendant's failure to preserve his constitutional challenge.

swered the question of whether a challenge based on facial unconstitutionality goes to subject matter jurisdiction," our supreme court has squarely addressed the question. In *Myers v. State*, 2004 UT 31, 94 P.3d 211, the Utah Supreme Court explained that even when Myers argued, for the first time on appeal, that the wholly and facially unconstitutional aggravated murder statute divested the trial court of jurisdiction, he had "failed to state any legitimate jurisdictional defect" because "[t]he Utah Code provides that 'the district court has original juris-

diction in all matters civil and criminal, not excepted in the Utah Constitution and not prohibited by law.'" *Id.* at ¶ 16 (quoting Utah Code Ann. § 78–3–4(1)). The instant case is no different. Thus, even when Norris argues, for the first time on appeal, that the communications fraud statute is facially unconstitutional, and that such unconstitutionality goes to the subject matter jurisdiction of the district court, he fails "to state any legitimate jurisdictional defect." *Myers*, 2004 UT 31 at ¶ 16, 94 P.3d 211.