2010 UT 28

**Ina Marie JOHNSON, Petitioner
and Appellee,**

v.

**Neldon Paul JOHNSON, Respondent
and Appellant.**

**No. 20080274.**

Supreme Court of Utah.

May 7, 2010.

Rehearing Denied June 28, 2010.

Denver C. Snuffer, Jr., Robert D. Dahle, Sandy, for petitioner.

Rosemond G. Blakelock, Provo, for respondent.

On Certification from the Utah
Court of Appeals

PARRISH, Justice:

## INTRODUCTION

¶ 1 Defendant Neldon Johnson appeals the district court's denial of his motion to vacate his divorce decree for lack of subject matter jurisdiction. The district court concluded that the court that granted the divorce decree terminating the marriage of Neldon and Ina Johnson lacked subject matter jurisdiction because the parties were never legally married. It nevertheless judicially estopped Mr. Johnson from asserting lack of subject matter jurisdiction because he had admitted the existence of the marriage in the original divorce proceeding thereby preventing Ms. Johnson from initiating a timely action to establish a statutory marriage under Utah Code section 30–1–4.5 (2007). Because we hold that the original court did in fact have subject matter jurisdiction, we affirm the dismissal of Mr. Johnson's 60(b) motion to vacate the divorce decree.

## FACTUAL & PROCEDURAL BACKGROUND

¶ 2 The Utah Fourth District Court granted a divorce decree ending the marriage of Neldon and Ina Johnson in June 2001. At that time, the parties stipulated to a $2,800,000 property settlement, which required Mr. Johnson to pay Ms. Johnson $8,333.33 a month, secured by a note and trust deed on Mr. Johnson's company's real and personal property and inventory. Except for a $25,000 court ordered penalty, Mr. Johnson has paid Ms. Johnson nothing under the property settlement. Mr. Johnson has filed many challenges to the divorce decree since stipulating to it, all of which have been denied. These challenges were made as collateral attacks to the divorce decree rather than appeals from it.

¶ 3 In September 2007, Mr. Johnson filed a Motion to Vacate the Decree and Amended Decree of Divorce under Utah Rule of Civil Procedure 60(b) on the grounds that the district court lacked subject matter jurisdiction to adjudicate the divorce as the parties were never legally married, a fact that neither party now denies. Mr. Johnson now appeals the district court's ruling denying the motion to vacate.

¶ 4 When Ms. Johnson filed for divorce, her complaint alleged that the parties had been married on May 3, 1964. Mr. Johnson admitted in his answer that this was true. In reality, however, although the parties had intended to get married on May 3, 1964, car troubles prevented them from carrying out their plan. Instead, the Johnsons spent several days away and when they returned, they told their friends and family that they had married, even though no actual marriage ceremony had taken place. Approximately one year later, Mr. and Ms. Johnson were married in a religious ceremony, but never took steps to have their marriage legally recognized.

¶ 5 The district court denied Mr. Johnson's motion to vacate. Although the court found that the parties were never married and held that the court that issued the divorce decree lacked subject matter jurisdiction, it denied the motion to vacate on the basis that judicial estoppel prevented Mr. Johnson from raising the parties' lack of marriage so long after the issuance of the original decree. We conclude that the original district court had subject matter jurisdiction to grant the divorce decree and therefore affirm. We have jurisdic-

tion over this matter pursuant to Utah Code section 78A–3–102(3)(j) (2008).

## STANDARD OF REVIEW

¶ 6 "A denial of a motion to vacate a judgment under rule 60(b) is ordinarily reversed only for an abuse of discretion." *Dep't of Social Servs. v. Vijil,* 784 P.2d 1130, 1132 (Utah 1989). However "the propriety of [a] jurisdictional determination, and hence the decision not to vacate, becomes a question of law upon which we do not defer to the district court." *Id.* Thus, the district court's decision to deny Mr. Johnson's motion to vacate on the basis of a lack of subject matter jurisdiction is a question of law, and we accordingly afford no discretion to that decision. *See id.*

## ANALYSIS

### THE DISTRICT COURT HAS JURISDICTION OVER DIVORCES AND THUS HAS SUBJECT MATTER JURISDICTION TO DETERMINE THE RIGHTS OF PARTIES WHO SUE IN DIVORCE

¶ 7 The original district court had the authority to determine whether Mr. and Mrs. Johnson met the statutory grounds for divorce and thus had subject matter jurisdiction over their divorce proceedings. In *Caffall v. Caffall,* we determined that a court issuing a divorce decree for a marriage later found to be void did not have subject matter jurisdiction to do so because no marriage existed. 5 Utah 2d 407, 303 P.2d 286, 288 (1956). We now conclude that this reasoning erroneously expanded the meaning of subject matter jurisdiction and accordingly overrule *Caffall.*

¶ 8 "Subject matter jurisdiction . . . is the authority of the court to decide the case." *Chen v. Stewart,* 2004 UT 82, ¶ 38, 100 P.3d 1177. "The district court has original jurisdiction in all matters civil and criminal, not excepted in the Utah Constitution and not prohibited by law." *Id.* (quoting Utah Code Ann. § 78–3–4 (2003)). Usually, "in order to challenge subject matter jurisdiction, [a party is] required to challenge the

authority of the court to hear the underlying case." *Id.*

¶ 9 The concept of subject matter jurisdiction does not embrace all cases where the court's competence is at issue. "Where the court has jurisdiction over the class of case involved, judgment is not void on the ground that the right involved in the suit did not embrace the relief granted." *Perry v. McLaughlin,* 754 P.2d 679, 682 (Utah Ct. App.1988). Rather, the concept of subject matter jurisdiction relates to "the relationship between the claim and the forum that allows for the exercise of jurisdiction." *Chen,* 2004 UT 82, ¶ 35, 100 P.3d 1177. Instances where a court lacks subject matter jurisdiction include when a federal court is asked to adjudicate matters of state law with no diversity of citizenship, *Stephens v. Walmart Stores,* 2010 WL 1487213, *2, 2010 U.S. Dist. Lexis 35506, *4 (M.D.Ga.2010); when a state court is asked to adjudicate a matter of administrative law when the parties have not exhausted their administrative remedies, *Housing Auth. v. Snyder,* 2002 UT 28, ¶¶ 9, 11, 44 P.3d 724; or when the statute permitting a party to sue another party requires statutory compliance, as with notice of claim requirements for suit against governmental entities, *Thomas v. Lewis,* 2001 UT 49, ¶ 20, 26 P.3d 217. In these instances, the court cannot adjudicate the case because it has not been given the authority to do so.

¶ 10 Because parties can raise subject matter jurisdiction at any time during a proceeding, it makes sense to cabin the issues that fall under the category of subject matter jurisdiction. *See Chen,* 2004 UT 82, ¶ 36, 100 P.3d 1177 (finding that parties mischaracterized their claim as a lack of subject matter jurisdiction in order to avoid waiver); *cf. State v. Norris,* 2007 UT 5, ¶ 9, 152 P.3d 305 (finding that a defendant's constitutional challenge to the statute under which he was convicted did not raise a challenge to the court's subject matter jurisdiction). For this reason, most of our cases that have addressed subject matter jurisdiction have considered the authority of the court to adjudicate a class of cases, rather than the specifics of an individual case. In *Career Service Review Board v. Utah Department of Correc-*

*tions,* for instance, we held that the Career Service Review Board (the "Board") did not lose subject matter jurisdiction over a career service employee as a result of the factual intricacies of the case. 942 P.2d 933, 941–42 (Utah 1997). A statute clearly gave the Board jurisdiction over appeals from reprimand decisions of the department of corrections. *Id.* at 941. Because the Board had statutory authority to consider the appeal, we determined that the specific facts went to the merits rather than to whether the Board had subject matter jurisdiction to hear the appeal in the first place. *Id.* at 942. We came to a similar conclusion in *Chen* when we held that a challenge to the court's authority to appoint an interim CEO in the context of a company dispute did not raise an issue of subject matter jurisdiction. 2004 UT 82, ¶ 49, 100 P.3d 1177. Rather, because the court had the authority to hear the underlying dispute, the challenge was more properly characterized as a challenge to the court's exercise of its equitable powers. *Id.* ¶ 50.

¶ 11 Opinions from other jurisdictions are consistent with this approach. For example, without considering subject matter jurisdiction, Texas courts have held that "a divorce judgment, unappealed, and regular on its face, is not subject to a collateral attack in a subsequent suit." *Johnson v. Ventling,* 132 S.W.3d 173, 178 (Tex.Ct.App.2004) (quoting *Putegnat v. Putegnat,* 706 S.W.2d 702, 703–04 (Tex.App.1986)) (refusing to allow district court to reverse a divorce decree four years after it was entered even though the parties stipulated that they had never been married because the district court lost jurisdiction to modify the decree after the thirty-day appeals period had lapsed). And although an Ohio court has ruled that its domestic relations court lacks subject matter jurisdiction to adjudicate a divorce when there was no underlying marriage, that ruling concerned a court of special jurisdiction rather than, as is the case here, a court of general jurisdiction. *Donovan v. Templeton,* No. 16204, 1997 WL 337657 at *2–4, 1997 Ohio App. LEXIS 2617 at *5–8 (Ohio Ct.App., May 9, 1997). Further, while the Ohio Court of Appeals allowed the matter to be characterized as subject matter jurisdiction, it found that a lack of subject matter jurisdiction premised on "technical or procedural irregularity" is waived if not promptly raised, unlike subject matter jurisdiction concerning the court's "general authority to decide cases within a class." *Id.* at *3, 1997 Ohio App. LEXIS 2617 at *7 (internal quotation marks omitted).

¶ 12 The limited definition of subject matter jurisdiction applied in other cases differs significantly from our holding in *Caffall,* where we held that a district court lacks subject matter jurisdiction to adjudicate a divorce if no underlying marriage exists. 303 P.2d at 288. Because the district court clearly has the authority to adjudicate divorces, looking to the specific facts of a particular case is inconsistent with our usual definition of subject matter jurisdiction. The court of appeals in *Van Der Stappen v. Van Der Stappen* points out that the *Caffall* holding is "inconsistent with the generally announced and fundamental legal proposition that 'subject matter jurisdiction is the authority and competency of the court to decide the case,' without which, the court may not validly act." 815 P.2d 1335, 1339 n. 5 (Utah Ct.App.1991) (quoting *Dep't of Social Servs. v. Vijil,* 784 P.2d 1130, 1132 (Utah 1989)). Unlike cases where a party has not exhausted its administrative remedies or has failed to comply with statutory prerequisites to suit, "[t]he discovery that the parties never had a valid marriage [does] not … divest the court of its authority to resolve the dispute between them." *Id.* at 1339 n. 8. As a result, the holding in *Caffall* "unnecessarily blurs the distinction between a mistake as to the exact nature of the subject matter in dispute and the court's ultimate authority and competence to decide the dispute." *Id.* Just as a court adjudicating a contract dispute has the authority to determine that no contract exists without losing subject matter jurisdiction over the dispute, a court has the authority to adjudicate a divorce claim even if the court later determines that no marriage ever existed. We therefore overrule our holding in *Caffall* and hold that because courts of general jurisdiction have the authority to adjudicate divorces, we will not invalidate a divorce decree on the grounds that the "right involved in the suit did not

embrace the relief granted." *See Perry*, 754 P.2d at 682.

¶ 13 In this case, the district court had subject matter jurisdiction to adjudicate Ms. Johnson's petition for divorce. Because Mr. Johnson's motion to vacate the divorce decree under rule 60(b) was premised on the erroneous assumption that the original district court lacked subject matter jurisdiction to adjudicate the divorce, the motion was properly denied. Although the district court based its denial of the 60(b) motion on other grounds, we are free to affirm the dismissal on any grounds apparent from the record. *See First Equity Fed., Inc. v. Phillips Dev., LC*, 2002 UT 56, ¶ 11, 52 P.3d 1137.

## CONCLUSION

¶ 14 We hold that the original district court that issued the Johnsons' 2001 divorce decree did not lack subject matter jurisdiction and thus Mr. Johnson cannot collaterally attack it. We accordingly affirm the district court's denial of Mr. Johnson's rule 60(b) motion to vacate his divorce decree.

¶ 15 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Justice NEHRING concur in Justice PARRISH's opinion.